**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **WIAV NETWORKS, LLC, a Virginia** | § | |
| **limited liability company,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 5:09-CV-101 (DF)** |
| **vs.** | § | |
| | § | |
| **3COM CORPORATION et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

# O R D E R

Before the Court is Movants' Joint Motion to Transfer Venue Under 28 U.S.C. §
1404(a).[1]  Dkt. No. 350.  Also before the Court are Plaintiff's Response, Movants' Reply, and
Plaintiff's Sur-reply.  Dkt. Nos. 361, 371, and 381, respectively.  The Court conducted a hearing
on the matter on June 3, 2010.  Dkt. No. 402 (hearing minutes).  Having considered all relevant
papers and pleadings as well as the arguments of counsel, the Court finds that Movants' Motion
to Transfer should be **granted.**

## I. BACKGROUND

WiAV Networks, LLC ("Plaintiff") initiated this patent infringement suit on July 7, 2009
against over sixty defendants alleging infringement of United States Patent Nos. 6,480,497 and

---

[1]       The motion was initially filed by Defendants Acer America Corp.; Acer Inc.; Asus Computer Int'l;
Belkin, Inc.; Belkin Int'l, Inc.; Canon U.S.A., Inc.; Cisco Systems Inc., D-Link Systems, Inc.; Epson America, Inc.;
Fujitsu America, Inc.; Gateway, Inc.; General Dynamics Itronix Corp.; Lexmark Int'l, Inc.; NETGEAR, Inc.;
Nintendo of America, Inc.; Nintendo Co., LTD.; Novatel Wireless, Inc.; Novatel Wireless Solutions, Inc.; Palm,
Inc.; Panasonic Corp.; Panasonic Corp. of N. America; Sierra Wireless America, Inc.; and UTStarcom, Inc.
Defendants 3Com Corp.; Hewlett-Packard Co.; Seiko Epson Corp.; Option Wireless USA, Inc.; and Option NV
subsequently joined in the motion.  *See* Dkt. Nos. 354, 358, 370, and 377.

5,400,338.  Dkt. No. 1.  The patents-in-suit generally relate to wireless technology and have been asserted against other defendants in two other litigations in this court: *WiAV Networks LLC v. Above-Net, Inc., et al.*, No. 5:08-cv-131 (filed July 25, 2008) and *WiAV Networks LLC v. Kyocera Communications, Inc., et al.*, No. 5:09-cv-088 (filed June 17, 2009).  Both cases settled as to all defendants prior to a *Markman* ruling.  Forty-one defendants remain in the present action.  The moving Defendants ("Movants") now seek to transfer this case to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a).

## II. LEGAL PRINCIPLES

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) presupposes that the action has been brought in a proper venue but authorizes its transfer to another proper district that is more suited to the convenience of witnesses and the needs of justice.  The Supreme Court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  The defendant has the burden to show "good cause" that transfer is appropriate.  *In re Volkswagen*, 545 F.3d at 314 ("[I]n order to support its claim for a transfer, [defendant] must satisfy the statutory requirement and *clearly demonstrate* that a transfer is for the convenience of parties and witnesses, in the interest of justice." (emphasis added)).

The Fifth Circuit has made clear that the first determination a district court must make is whether the claims might have been brought in the suggested transferee district.  *Id.* at 312-13.

After such a determination, the district court must then consider the convenience of the parties in both venues. *Id.* at 314-16; *see also J2 Global Commc'ns Inc. v. Protus IP Solutions, Inc.*, Civil Action No. 6:08-CV-275, 2008 WL 5378010, at *3-6 (E.D. Tex. Dec. 23, 2008) (J. Love). A convenience determination is essentially a balancing of the inconveniences that will transpire as a result of the plaintiff's choice of venue. This balancing of conveniences involves the examination of several private and public interest factors, none of which has dispositive weight. *In re Volkswagen*, 545 F.3d at 315. The private factors address (1) the availability of sources of proof, (2) the court's ability to secure witnesses' attendance, (3) the expense associated with witnesses' attendance, and (4) all other factors relevant in conducting an expeditious and inexpensive trial. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501(1947)). The public convenience factors address (1) administrative issues and the congestion of the courts' dockets, (2) the local interest in having the dispute decided locally, (3) the courts' familiarity with the controlling law, and (4) the potential conflicts of law issues that may arise. *Id.*

## III. DISCUSSION

As an initial matter, Plaintiff does not dispute Movants' position that this action might have been brought in the Northern District of California because personal jurisdiction and venue are both proper there. Therefore, the Court proceeds to consider the private and public interest factors.

### A. Relative Ease of Access to Sources of Proof

Movants argue that the relevant documents for several companies including the Defendants as well as the Defendants' wireless chipset suppliers as located in the Northern District of California. Dkt. No. 350 at 14. Movants also submit that the patents' original

assignee, Metricom, Inc., "previously operated in northern California and first commercialized relevant technology in northern California[.]" *Id.*

Plaintiff responds that the evidence in this case is spread throughout multiple locations in the United States and worldwide with a large concentration of potential evidence located near this District. Dkt. No. 361 at 9. According to Plaintiff, Defendants Dell, ZTE, Hewlett Packard, Nokia, and Sony Ericsson all have headquarter offices and major facilities in Texas. *Id.* Because these defendants are among the largest defendants and represent a significant volume of infringing products and activities, Plaintiff argues, the proximity of this District to their offices and facilities represents more convenient access than the transferee forum. *Id.* Plaintiff adds that several of the wireless chipset suppliers are located and have offices in Texas. *Id.* at 10. Plaintiff submits that these locations represent "crucial sources of technical evidence of the accused functionalities[.]" *Id.* Additionally, Plaintiff points to the Wi-Fi Alliance, based solely in Austin, Texas, as a source of evidence more conveniently accessed by this District.[2] *Id.* at 10-11.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). In this case, there appears to be no dispute that the accused infringers' documents are located across the United States and in both California and Texas. Unlike the case in *Genentech* where

---

[2]        The Wi-Fi Alliance is an independent non-profit organization, composed of various companies, formed in 1999 to certify the interoperability of wireless local area network products based on the IEEE 802.11 wireless standards. Nearly all of the Defendants are member companies of the Wi-Fi Alliance. *See* http://www.wi-fi.org.

no evidence was housed within the State of Texas, several Defendants have documents in Texas.

And those Defendants' documents that are neither in Texas nor California will need to be

transported in any event.  That is, a New York or Asian Defendant's documents will have to be

transported and it would either be less or more inconvenient to transport them to Texas or

California.  *Cf. Genentech*, 566 F.3d at 1346 ("[B]ecause the documents housed in Europe and

Washington, D.C. will need to be transported in any event, it is only slightly more inconvenient

or costly to require the transportation of those materials to California than Texas.").

Additionally, these documents do not typically reside elsewhere and have not been transported

solely for purposes of litigation.  *Contra In re Hoffmann-La Roche Inc.*, 587 F.3d 1333,1337

(Fed. Cir. 2009) ("But, if not for this litigation, it appears that the documents would have

remained a source of proof in California.").  Keeping this case in the Eastern District of Texas

would not impose a significant and unnecessary burden on Defendants.[3]  Accordingly, this factor

is neutral.

### B. Availability of Compulsory Process[4]

This factor is concerned with a court's ability to compel non-party witnesses to attend

---

[3]     To be clear, this Court does not hypothesize, using manufacturing facilities and branch sales offices, that the Eastern District could serve as a "centralized location."  Instead, it is undisputed that the accused infringers and their respective documents are scattered across the country and the world so that those documents would have to be transported regardless of venue.

[4]     This private interest factor and the following factor, the cost of attendance for willing witnesses, of course, rely in large part on the specific locations of party and non-party witnesses.  Movant's filed their motion prior to the scheduling conference or the exchange of initial disclosures attempting to curtail any argument that their motion was untimely.  *See* 06/03/2010 Hearing Tr., Dkt. No. 410, at 6 ([Defense Counsel]: ". . . We wanted to be sure that it wouldn't be argued that we delayed.").  For its part, Plaintiff filed its response and sur-reply without objection to the timing of motion or the stage of the litigation.  Indeed, neither party objected or asked for postponement of the present motion's resolution.  This indicates the parties' belief that specific witness information would do little to alter the underlying facts implicated by this motion.  While the Court's task is complicated by this lack of information, it will address the factors using the information provided.

trial.  It will generally favor transfer when more non-party witnesses reside within the proposed venue than in the current venue.  *Volkswagen*, 545 F.3d at 316.  Movants argue that the transferee venue has relevant subpoena power over many important witnesses including both of the inventors of the patents-in-suit, two of the four prosecuting attorneys, and several of the Defendants' chipset suppliers.  Dkt. No. 350 at 10-11, 13-14.  Plaintiff responds that the Movants cite only certain categories of witnesses residing only in California.  Dkt. No. 361 at 11.  Plaintiff argues that many additional potential witnesses are spread throughout the nation with many in Texas including chipset suppliers and the Wi-Fi Alliance, which is only reachable in Texas.  *Id*. Plaintiff adds that the Northern District of California's subpoena power over the inventors and prosecuting attorney offers little practical advantage as one of the inventors and one of the attorneys are "willing witnesses."  *Id*. at n.11.

    The parties have not identified precisely which non-party witnesses will testify, but this factor weighs most strongly in favor of transfer when the proposed venue has absolute subpoena power over all of the third party witnesses.  *Volkswagen*, 545 F.3d at 316-317.  Despite the lack of specificity as to witnesses, there is no dispute that this Court does not enjoy absolute subpoena power over any of the potential third-parties discussed.  Plaintiff's position overlooks that the venue with absolute subpoena power is preferred.  *Id.* at 316 ("[T]he venue transfer analysis is concerned with convenience, and that a district court can deny any motions to quash does not address concerns regarding the convenience of parties and witnesses.").  While several of the chipset suppliers and the Wi-Fi Alliance may be compelled to attend trial, the Court cannot compel attendance at a deposition within the district and any such subpoena would be subject to a motion to quash.  *Hoffmann-La Roche*, 587 F.3d at 1337.  In this case, the Northern District of

-6-

California enjoys absolute subpoena power over several chipset suppliers as well as the inventors and two of the prosecuting attorneys, but does not enjoy subpoena power over certain other third-parties, such as the Wi-Fi Alliance.[5]   The Northern District of California, however, does have more usable subpoena power, that is, greater ability to compel witnesses for both depositions and trial.  *Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer[.]").  Accordingly, this factor weighs in favor of transfer.

### C. Cost of Attendance for Willing Witnesses

Movants submit that sixteen of the defendants are based in California with several of those headquartered in the Northern District of California.  Dkt. No. 350 at 11. Of the remaining Defendants, thirteen are based overseas with nine in Asia, which makes California more convenient, Movants argue.  *Id.* at n.3.  Three Defendants are based in Europe, and one is based in Canada.  The remaining U.S. Defendants are scattered among Kentucky, New York, Florida, North Carolina, Georgia, Illinois, and Washington.  *Id.*

In response, Plaintiff concedes "that some parties and witnesses are located in California, for whom this District may not be as close and convenient as the proposed transferee forum."  Dkt. No. 361 at 12.  Plaintiff adds, though, that "no one forum is likely to be convenient for all the parties, not even the Eastern District of Texas."  *Id.*  Plaintiff submits that five Defendants have at least principal corporate offices in Texas with Defendants Dell and ZTE headquartered in

---

[5]        That one of the inventors and one of the prosecuting attorneys are "willing witnesses" does not affect the transfer calculus.  Practical realities – for example, the state of document storage and transport– do not render any of the factors superfluous.  *In re TS Tech USA Corp.*, 551 F.3d 1315,1321 (Fed. Cir. 2009) (citing *Volkswagen*, 545 F.3d at 316.).

Round Rock, Texas and Richardson, Texas, respectively. *Id*. Another seven Defendants, Plaintiff adds, have major sales offices, research, manufacturing, or technical facilities, or other major corporate offices in Texas. *Id*. at 13. On balance, Plaintiff argues, a transfer to the Northern District of California would merely reallocate the burdens to the parties. *Id*. at 14.

Movants reply by addressing the "random facilities" that Plaintiff cites as "crucial sources of evidence" as having nothing to do with this case. Dkt. No. 371 at 3.

The convenience for and cost of attendance of witnesses is a very important factor. *Genentech*, 566 F.3d at 1343; *see also In re Nintendo*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). To analyze this factor, the Fifth Circuit employs the "100-mile" rule. Under this rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen*, 545 F.3d at 317. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id*. The Court's task is complicated by the fact that the parties have not submitted lists with names and locations of specific witnesses. In light of recent case law, however, the focus of the inquiry appears to be the U.S. witnesses, as foreign witnesses will be required to travel a significant distance no matter where they testify. *Genentech*, 566 F.3d at 1344; *see also Novartis Vaccines and Diagnostics*, *Inc. v. Wyeth*, No. 2:08-cv-067, 2010 WL 1374806, at *2 (E.D. Tex. Mar. 31, 2010) ("When applying the 100-mile rule, a court should not place too much weight to the relative inconvenience for overseas parties and witnesses."); *but see Nintendo*, 589 F.3d at 1199 (discussing that the Japanese witnesses

would have to travel an additional 1,756 miles or 7 hours by plane to Texas than to Washington

state).  Finally, in cases where the witnesses are distributed, the theory that a forum could serve

as a centralized location has been rejected.  *See Genentech*, 566 F.3d at 1345; *see also Nintendo*,

589 F.3d at 1199 (citing *Genentech*).

The Plaintiff is a Virginia company.  Unlike recent cases, several party and non-party

witnesses reside in Texas.  For example, Dell, ZTE, Nokia, and Hewlett-Packard have significant

Texas presences.  It is undisputed, however, that no witness resides in the Eastern District of

Texas or within 100 miles of this courthouse.  While Plaintiff points to the numerous sales

offices, manufacturing plants, and research and development facilities for several Defendants, it

has not identified a single potential witness in this District.  That potential witnesses live in the

State of Texas does not suffice.  *Volkswagen*, 545 F.3d at 317 (finding that the potential

witnesses' residence in Dallas, Texas favored transfer to the Dallas division from the Eastern

District of Texas); *see also SMDK Corp. v. Creative Labs, Inc*., No. 2:08-cv-026, 2009 WL

5246368 (E.D. Tex. Dec. 11, 2009) (granting motion to transfer where no witnesses lived in the

District and co-inventor living in Austin was the sole Texas witness); *Ennova Direct, Inc. v. LG

Electronics U.S.A., Inc. et al*, No. 2:08-cv-022, (E.D.Tex. Mar. 31, 2010)  (order granting motion

to transfer venue).  On the other hand, several witnesses reside in the transferee forum or nearby.

Applying the 100-mile rule, those witnesses would be more inconvenienced by having to travel

to this District than to northern California.

Plaintiff's argument that transfer would merely reallocate the burdens to the parties for

which this District would be more convenient cannot be reconciled with the fact that several of

the Defendants outside the transferee venue have joined in the present motion.  For example,

3Com Corp. out of Massachusetts, Panasonic Corp. of N. America out of New Jersey, and

General Dynamics Itronix Corp. out of Florida – all closer to this District – all join in the motion.

Plaintiff's argument that the Texas Defendants' absence speaks volumes similarly falls on deaf

ears in light of the lack of opposition from those Texas Defendants.  In other words, the Texas

Defendants' silence is telling.  *See SMDK Corp.*, 2009 WL 5246368, at *1 ("The Northern

District of California may potentially be less convenient for defendants located closer to the

Eastern District of Texas, to wit, the New York, Arkansas, and Indiana defendants, but no

defendant opposes the present motion to transfer.).

In sum, like *Genentech*, *Nintendo*, and *TS Tech*, a significant number of potential

witnesses are clustered in or near the transferee venue while not a single witness resides in the

Eastern District of Texas.  Accordingly, this factor also favors transfer.

### D. Other Practical Considerations

Movants argue that no practical considerations weigh against transfer.  Dkt. No. 350 at

15.  Specifically, Movants contend that the this case is at its beginning stages, and Movants have

timely moved to transfer.  *Id*.  Plaintiff, on the other hand, argues that transfer to northern

California provides no practical benefits.  Dkt. No. 361 at 14.  Plaintiff submits that this Court

has greater familiarity with the case since the patents-in-suit have been previously asserted in this

forum.  *Id*.  "[A] new court," Plaintiff argues, "would have to familiarize itself with the case

anew."  *Id*.

The Fifth Circuit requires "reasonable promptness" in filing a motion to transfer venue.

*Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).  In the present case, the Court

has yet to hold a scheduling conference let alone issue scheduling, docket control, or discovery

orders. Thus, Movants' present motion is not untimely. *Cf. Novartis Vaccines,* 2010 WL 1374806, at *5 (denying transfer where movant waited sixteen months before moving for transfer, during which parties negotiated docket control, discovery, and protective orders, exchanged infringement/invalidity contentions, and proceeded through extensive document production).

Plaintiffs previously asserted the patents-in-suit in two causes before the court. *See WiAV Networks LLC v. Above-Net, Inc., et al.*, No. 5:08-cv-131 (filed July 25, 2008) & *WiAV Networks LLC v. Kyocera Communications, Inc., et al.*, No. 5:09-cv-088 (filed June 17, 2009). Both cases settled as to all defendants prior to claim construction. In this case, the parties have not exchanged infringement and invalidity contentions nor have claim construction briefs been submitted. The fact that scheduling, discovery, and claim construction have not proceeded in this case does not support Plaintiff's claim that the Court's "familiarity" warrants denial of transfer. *Cf. In re Vtech Commc'ns., Inc.*, Misc. No. 909, 2010 WL 46332, at *2 (Fed. Cir. Jan. 6, 2010). Accordingly, this factor is neutral.

### E. The Local Interest in Having the Dispute Decided Locally

Under this factor, transfer may be appropriate where there is "no relevant factual connection" to the present venue. *Volkswagen*, 545 F.3d at 318. Further, a district court is to consider "those actually affected – directly and indirectly – by the controversies and events giving rise to a case." *Id.* Movants argue that the Northern District of California has a strong local interest because Plaintiff's lawsuit has implicated a "multitude of northern California-based companies." Dkt. No. 350 at 15. Additionally, Movants submit that the "Defendants' wireless chipset suppliers are largely based in Silicon Valley" and that the patents originated when the

inventors worked for a northern California company.  *Id*.  Thus, according to Movants, "a jury

member from the Northern District of California would likely see the issues of this case having

local import."  *Id*.  The Court agrees.  *Hoffman-La Roche*, 587 at 1336 (work of reputation of

those developing and testing accused products called into question by patent infringement suit).

Plaintiff's arguments to the contrary lack merit.  Plaintiff argues that this District has no

less a local interest in this case because of the witnesses near it.  Dkt. No. 361 at 15.  Plaintiff

fails, however, to describe the factual connection present or address how those in this District

would be affected.  Plaintiff points to its previous assertion of the patents-in-suit, but does not

reference the Court to any authority holding that such prior use of a venue counsels against

transfer.  Finally, Plaintiff argues that several of the Defendants have previously availed

themselves of this District for their own lawsuits.  *Id*.  This argument has been rejected.

*Genentech*, 566 F.3d at 1346 (district court's determination that movant's prior initiation of a

lawsuit in the transferor venue weighed against transfer was clear error).

In short, the Northern District of California has a stronger "factual connection" to the

events giving rise to this case.  Accordingly, this factor weighs in favor of transfer.

### F. The Courts' Familiarity with the Controlling Law

Patent infringement suits are governed by federal law.  Both the Northern District of

California and this Court are capable of applying federal patent law.  Plaintiff argues that "this

District has been the site of extensive litigation over similar Wi-Fi technology, involving many of

the *same defendants and infringing products*, and third party suppliers."  Dkt. No. 361 at 16

(emphasis in original).  Plaintiff's argument is misplaced and lacks merit.  The accused

instrumentalities and technology do not affect a court's application of the patent laws.  This

factor is neutral.

### G. The Potential Conflicts That May Arise

Neither party contends that this factor is applicable to the present case.

### H. The Administrative Difficulties Flowing from Court Congestion

Neither party contends that this factor is applicable to the present case.

### IV. CONCLUSION

After review of the private and public interest factors, Movants have met their burden to demonstrate that venue is "clearly more convenient" in the Northern District of California. Despite the distribution of defendants and witnesses across the globe and United States, there is a significant locus of parties and potential witnesses in the transferee venue, which warrants transfer of this case to the Northern District of California. For the foregoing reasons, Movants' Motion to Transfer Venue, Dkt. No. 350, is hereby **GRANTED**. The above-captioned cause is hereby **TRANSFERRED** to the Northern District of California.

**IT IS SO ORDERED.**

**SIGNED this 15th day of July, 2010.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE