1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WiAV NETWORKS, LLC,

      Plaintiff,

  v.

HEWLETT-PACKARD CO.,

      Defendant.

_____/

No. C 10-03448 WHA

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER**

**INTRODUCTION**

In this patent infringement action, plaintiff moves for leave to amend its first amended complaint, and defendant moves for leave to amend its answer. For the reasons stated below, plaintiff's motion is **GRANTED** and defendant's motion is also **GRANTED**.

**STATEMENT**

Plaintiff WiAV Networks, LLC owns two patents related to wireless technology. The name "WiAV" is a condensed form of "wireless audio-visual." Defendant Hewlett-Packard Co. is a maker and vendor of wireless devices. In its complaint, WiAV asserted that HP devices infringed its patents in suit.

**United States District Court**
For the Northern District of California

1   This action originally was filed in the United States District Court for the Eastern

2   District of Texas and was eventually transferred here.  The original complaint named

3   *sixty-eight* defendants, running the gamut from Acer to ZTE (*see* Dkt. 1).  Because these

4   defendants were largely unrelated companies with unrelated products, and there was no

5   allegation that the defendants had acted in concert, plaintiff was ordered to show cause

6   why all but one defendant should not be dismissed for misjoinder under Rule 21 (*see*

7   Dkt. 486).  Perhaps as a Hail Mary pass, plaintiff offered to dismiss all but twelve

8   companies that it deemed the "Laptop Defendants."  HP was one such company.  Though

9   all the laptop defendants made accused devices compliant with the IEEE 802.11 wireless

10  protocol, they were found not to be logically connected to one another (*see* Dkt. 583).

11  Thus, all defendants were dismissed save HP.

12  Against this backdrop, plaintiff now seeks to amend its complaint to (1) include

13  specific allegations concerning induced and contributory infringement involving HP's

14  end-users and distributors; (2) omit references to the dismissed defendants; and (3) "add a

15  few additional exemplars" of accused HP products.  The proposed amendment does *not*

16  add additional patents.

17  HP objects to the third aspect only, on the general ground that HP is supposed to

18  be a laptop defendant, but the additional exemplars are not laptops.  Specifically, HP

19  opposes the proposed amendment because it would expand the scope of the suit to include

20  printers, routers, handheld devices, and desktop computers.  The proposed amendment

21  features several changes.  With respect to the '338 patent, "printer devices such as the

22  Officejet Pro 8500 Wireless and Laserjet 9040 series, and handheld devices such as

23  wireless IPAQ series" are added as exemplars.  With respect to the '497 patent, "printer

24  devices such as the Officejet Pro 8500 Wireless and Laserjet 9040 series, and wireless

25  router devices such as the HP V110 wireless N router and the HP V-M200 802.11n

26  Access Point" are added as exemplars.

27  Defendant considers these exemplars just the tip of the iceberg, since WiAV's

28  disclosure of patent infringement contentions accused *218* products, including a

**United States District Court**
For the Northern District of California

1    substantial number of desktop computers, printers, handhelds, and routers.  HP contends

2    that this expansion would be unduly prejudicial.  HP also opposes on the ground that

3    WiAV negotiated in bad faith and tried to trick HP into giving its assent to this

4    amendment, the true nature of which was revealed only at the last minute.

5       Defendant moves to amend its answer to include the defense of inequitable

6    conduct.  Plaintiff opposes this motion on the grounds that intent has been inadequately

7    pled, and it is too late and too prejudicial to only now assert this defense.

8                               **ANALYSIS**

9       At the outset, an observation about what plaintiff's motion for leave to amend its

10    complaint is really about.  Plaintiff could accuse these new products without seeking leave

11    simply by filing a new lawsuit.  Unspoken here is the effect of the statute of limitations.

12    The proposed amendment relates back to allegations in the original complaint filed in

13    Texas in July 2009.  In contrast, a fresh lawsuit would deny plaintiff the possibility of

14    collecting eighteen months of damages.  With this in mind, we turn to the applicable

15    legal standard.

16       Rule 15(a) governs the instant motion.  Leave to amend should be freely given

17    "when justice so requires."  This policy favoring amendment emphasizes the importance

18    of giving a plaintiff his day in court; when a plaintiff relies on facts or circumstances that

19    are a proper subject of relief, a plaintiff "ought to be afforded an opportunity to test his

20    claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In the Ninth Circuit,

21    district judges commonly consider the following factors:  (1) futility of amendment;

22    (2) prejudice to the opposing party; (3) undue delay; and (4) bad faith.  *DCD Programs,*

23    *Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

24      **1.**      **FUTILITY**

25       The first factor is whether the proposed amendment would be futile.  Defendant

26    contends that, with respect to HP, this case has always been about laptops and nothing but

27    laptops.  To defendant, this contention is a premise that helps establish prejudice and bad

28    faith because it makes the expansion to desktops, routers, printers, and handhelds seem

1   deliberately sudden and calculated to surprise.  But this contention might also possibly

2   render the amendment futile if plaintiff's prior representations now preclude it from

3   litigating anything other than laptops.

4       It is undisputed that the original complaint and the first amended complaint gave

5   specific examples of only one accused category of devices — laptops.  But the parties

6   disagree as to the specificity with which a complaint must identify the products accused of

7   infringing the patents in suit.  In defendant's view, the complaint and the first amended

8   complaint accused *only* HP's portable computer devices, and it would be unfair to

9   dramatically expand the scope of this action now.

10      "[A] patentee need only plead facts sufficient to place the alleged infringer on

11  notice as to what he must defend."  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357

12  (Fed. Cir. 2007).  As a general proposition,

13          *Twombly* does not require such a list [a comprehensive list
            of all devices that are alleged to infringe patents]; it simply
14          requires facts sufficient to "raise the right to relief beyond
            the speculative level."  At this early stage of the proceedings
15          [a motion to dismiss], it is not necessary for [plaintiff] to
            identify each and every infringing device.

16
    *In re Papst Licensing GMBH & Co. KG Litigation*, 631 F.Supp. 2d 42, 45 (D.D.C. 2009).
17

18      In view of these guidelines, the instant action has not been strictly limited, with

19  respect to HP, to laptops ever since the original complaint.  That complaint asserted,

    generally:
20
            Each Defendant has used and continues to use the
21          technology claimed by the '497 Patent and '338 Patent in
            systems and methods that the Defendants make, use, sell,
22          and offer for sale, without Plaintiff's permission.

23  (*See* Dkt. 1, Compl. ¶ 2).  And, specifically:

24          Without a license or permission from Plaintiff, the HP
            Defendants infringed the [named] Patent[s] by importing,
25          making, using, offering to sell, and/or selling products and
            devices which embody the patented invention, *including*
26          portable computer devices, *such as* the Pavillion, HDX,
            TouchSmart, EliteBook, ProBook, Compaq, Compaq
27          Presario, and Mini series of laptops, notebook PCs, and
            tablet PCs (e.g. [various models]).

28

4

(*See* Dkt. 1, Compl. ¶¶ 60, 98) (emphasis supplied).  These allegations made clear that the examples given were non-exclusive examples of one category of accused device. This language persisted into the first amended complaint (*see* Dkt. 107, First Amd. Compl. ¶¶ 2, 58, 94).

Defendant tries to distinguish *Papst* by noting that while the complaint there made vague allegations of infringement by "digital cameras," it listed specific models of such cameras elsewhere in the complaint.  While this is true, the point was that a complaint, even if not artfully drafted, "must be read as a whole." *Papst*, 631 F.Supp. 2d at 46.  Read as a whole, WiAV's complaint and first amended complaint provided notice to HP that products other than laptops fell within the scope of the claims of the patents in suit.  For instance, WiAV accused printers made by Canon, routers made by Cisco, and handhelds made by Palm.  Of course, this cuts both ways, as HP might have fairly assumed that because nonlaptop devices made by other companies were accused, and HP's nonlaptop devices were not, HP was off the hook.

The first real hint that the claims might zero in on HP's laptops to the exclusion of all other devices came in plaintiff's response to the order to show cause why misjoinder should not be declared.  In that response, perhaps recognizing the weakness in its position, plaintiff proposed to voluntarily dismiss all but what it deemed the laptop defendants. Plaintiff thus designated HP as a laptop defendant for the limited purpose of avoiding a total defeat on the improper joinder issue.  This designation did not bind plaintiff to litigating nothing but laptops once HP became the sole defendant and WiAV's need to maintain a logical connection between multiple defendants vanished.

Nothing in plaintiff's prior positions with regard to HP and laptops has precluded it from accusing nonlaptop devices now; thus, the proposed amendment is not futile.  This factor favors the amendment.  Nevertheless, plaintiff's prior positions provide necessary context for evaluating prejudice, delay, and bad faith.

**United States District Court**
For the Northern District of California

### 2.   PREJUDICE

The second factor in determining the propriety of granting leave to amend is whether granting leave to amend would prejudice the defendant.  In general, "[t]he party opposing amendment bears the burden of showing prejudice."  *DCD Programs*, 833 F.2d at 187.  The Ninth Circuit has affirmed the denial of leave to amend when new allegations "would totally alter the basis of the action."  *M/V American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983).

Defendant contends that granting leave to amend will prejudice it by requiring the performance of more work.  Specifically, HP maintains that the proposed addition of new products will require it to redo initial disclosures and add dozens of new witnesses and hundreds of thousands of new documents, develop additional legal theories with respect to claim construction and non-infringement, and deal with new invalidity issues.

True, the proposed amendment, to the extent that it might open the door to 218 accused products, has the potential to transform this action into a Frankenstein's monster.  But this is a problem that can be managed by the parties in the first instance, and by establishing a new schedule.

Even assuming *arguendo* that the proposed amendment represents a marked departure from the original scope of the suit with respect to accused products, it does not "greatly alter[] the nature of the litigation," nor would it require defendant to undertake "an entirely new course of defense."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  The proposed amendment does not change the number of patents in suit.  Defendant does not contend that the addition of allegations of induced and contributory infringement adds appreciably to its burdens.  The fundamentals remain unchanged.

The absence of new claims distinguishes the present case from the decisions defendant relies upon to show prejudice.  In *Morongo,* 893 F.2d 1074, the amendment sought to add RICO, federal criminal depredation, and other federal claims to a complaint theretofore based on a violation of tribal ordinance.  In *M/V American Queen*,

**United States District Court**
For the Northern District of California

1  708 F.2d 1483, the amendment sought to add fraud and negligent breach of duty to

2  disclose claims to a complaint theretofore based on contract claims.

3          Defendant also makes the closely related argument that the additional work will

4  inevitably disrupt the schedule and thereby cause prejudice. Rest assured, the schedule

5  *will* be altered. That said, it should be acknowledged that "[d]isruption to the schedule of

6  the court . . . is not harmless." *Wong v. Regents of the Univ. of California*, 410 F.3d 1052,

7  1062 (9th Cir. 2005). Nevertheless, defendant has not demonstrated that the alteration of

8  the schedule will create prejudice sufficient to deny leave to amend under *Foman* and

9  *DCD Programs*. It is still early in this litigation. Though the original complaint was filed

10 in Texas way back in July 2009, there was never a case management conference or initial

11 disclosure until the transfer here (*see* Dkt. 588 at 18). Things began in earnest only after

12 the transfer and after the dismissal of the improperly joined defendants.

13         Defendant points out that under the current schedule, the deadline for serving

14 invalidity contentions is December 22, just six days after the hearing on this motion was

15 held. With respect to prejudice, even if the current schedule was not vacated, plaintiff's

16 disclosure of asserted claims and infringement contentions erased all doubt as to the

17 scope of the alleged infringements back on November 5. Peering further into the future,

18 under the current schedule, the trial date is not until January 9, 2012. At the hearing

19 when the date was set, it was specifically noted that the date was unusually far out (*see*

20 Dkt. 588 at 17).

21         Specifically with regard to discovery, it is typically "[a] need to *reopen* discovery

22 and therefore delay the proceedings [that] supports a district court's finding of prejudice

23 from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network*

24 *Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (emphasis supplied). But even under

25 the current schedule, the non-expert discovery *cut-off date* is not even until August 31,

26 2011.

27         Defendant points to two decisions in which district court judges denied motions

28 seeking leave to amend because of anticipated prejudicial schedule disruptions. These are

distinguishable because they involved the proposed addition of new *claims*, and the

rulings came, at most, six months before trial was scheduled to begin.

With modifications to the schedule and to the scope of the suit, granting leave to

amend will cause tolerable prejudice to defendant.  Still, HP will not be able to avoid

redoing its contentions and disclosures, at great expense.  It is only because plaintiff was

so tight-lipped that these were not done correctly the first time.  Therefore, leave to amend

will be granted only on the condition that plaintiff pay HP the sum of $20,000 to partially

reimburse defendant for the extra work, waste, and expenses caused by plaintiff's delay.

Provided that plaintiff meets this condition, this factor favors the amendment.

**3.     UNDUE DELAY**

The third factor in determining the propriety of granting leave to amend is whether

plaintiff unduly delayed in filing its motion.

Although the multiparty case began in Texas in 2009, this action in its current

form did not gel until all defendants but HP were dismissed on October 1, 2010.  Plaintiff

would not have been expected to propose this amendment before getting a ruling on its

offer to limit its allegations so as to tape together the so-called laptop defendants.

Moreover, the instant motion is timely under the case management deadline for

amendments.  True, plaintiff should not have wasted so much time before sharing with HP

the sheer number of accused products.  But that delay is not the same as a delay in seeking

the instant motion.  This factor favors the amendment.

**4.     BAD FAITH**

The final factor in determining the propriety of granting leave to amend is whether

leave is sought in bad faith.

Defendant alleges that plaintiff resorted to "gamesmanship" by allowing HP to

proceed under its laptop-only misapprehension until, on the eve of the filing deadline,

WiAV unveiled the full scope of alleged infringements.  Specifically, defendant contends

that plaintiff was deliberately unforthcoming during negotiations to obtain HP's assent to

this proposed amendment.  Defendant supports this contention by noting that although the

1   only devices specified in HP's initial disclosures on November 1 were laptops, plaintiff

2   took no steps to disabuse HP of its laptop-only notion until November 5, when WiAV

3   served its disclosure of patent infringement contentions.  In the interim, tranquil emails

4   exchanged between the parties' counsel gave no indication that far more than laptops

5   would soon be at issue.  WiAV's disclosure identified over 200 new products, suggesting

6   forethought and planning.  According to defendant, WiAV's goal was to gain HP's

7   stipulation before tipping its hand — November 5 was the last business day before the

8   November 8 deadline to amend the pleadings (*see* Dkt. 590).  Defendant contends that all

9   of this amounts to proof of a pattern of deception and misrepresentation constituting bad

10  faith under *DCD Programs*.

11         Plaintiff denies that HP's initial disclosures gave any inkling of defendant's

12  myopia; most of the disclosed witnesses pertained not to laptops but to the patents in suit

13  or unspecified prior art.  In any event, plaintiff's alleged silence after receiving HP's

14  initial disclosures lasted only four days.  Plaintiff avers that its primary purpose in seeking

15  leave to amend was to remove dismissed defendants and clarify its allegations regarding

16  indirect infringement; the proposal to add specific exemplars of accused products was

17  little more than an afterthought that happened to coincide with the completion of its

18  infringement contentions that same day.

19         The record does not support a finding of bad faith.  Defendant is correct that the

20  emails exchanged during the negotiations over assent to the proposed amendment hardly

21  trumpeted the proposed addition of new accused product exemplars.  Plaintiff's emails

22  mentioned the elimination of the dismissed defendants and the inclusion of contributory

23  and induced infringement.  They did not mention the addition of examples of new product

24  categories.  Plaintiff sent a draft of the proposed amended complaint on November 2 that

25  referred to "products and devices . . . including but not limited to portable computer

26  devices" (Thomases Decl. Exh. D) — the "but not limited to" language was new, but

27  apparently did not alarm defendant.  Plaintiff then sent a revised draft on November 5

28  that for the first time named and gave examples of HP printers, handhelds, and routers

United States District Court
For the Northern District of California

1   (Thomases Decl. Exh. H).  There are troubling aspects to these failed negotiations, but

2   the clash of hopelessly mismatched and dueling assumptions is as likely an explanation as

3   bad faith.

4        Perhaps more important to the instant motion, defendant alleges bad faith in

5   negotiating, not bad faith in offering the amendment.  *Wood v. Santa Barbara Chamber of*

6   *Commerce, Inc.*, 705 F.2d 1515, 1520 (9th Cir. 1983), cited by defendant, does not

7   support the view that pretrial "gamesmanship" suffices under *DCD Programs* as bad faith

8   in the sense of a "wrongful motive" for proposing the amendment.  Bad faith was a factor

9   in affirming a district judge's decision to deny leave to amend in *Wood*, but there the

10  proposed amendment would merely have duplicated other pending litigation, and was

11  viewed as a dilatory tactic in keeping with the appellant's habit of making repetitious

12  motions.  Along the same lines, the properly rejected proposed amendment in *Sorosky v.*

13  *Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir.1987), was offered with the "bad faith

14  motive" of adding a defendant who would destroy diversity jurisdiction.

15       There is the possibility that defendant is multiplying its accusations in hopes of

16  badgering plaintiff into a settlement.  Defendant was cautioned against this at the

17  December 16 hearing.  But this order takes the generous view that plaintiff proposed its

18  amendment for no reason other than a good faith desire to seek relief for purported patent

19  infringements.  This factor favors the amendment.

**CONCLUSION**

21       Based on an evaluation of these four factors, plaintiff's motion for leave to amend

22  is **GRANTED**, subject to the following understandings and conditions.  These are aimed at

23  alleviating what would be a bone-crushing exercise of wading through the extravagant

24  number of *218* accused products.

25       1.     This action is to be limited to HP products *only*.

26       2.     WiAV wasted valuable time before it pulled back the curtain by

27  serving its infringement disclosures.  Because of the resulting prejudice to HP, a

28  condition of filing an amended complaint is that plaintiff must pay defendant

**United States District Court**
For the Northern District of California

$20,000 to partially reimburse HP for fees and expenses it will incur due to this wasted time.  If plaintiff wishes to amend its complaint, payment must be made by **NOON ON DECEMBER 31, 2010**.  No payment, no amendment.

3.     Because of the large number of products, there is a serious risk that the jury will become confused and the trial unduly protracted.  To prevent this, the court is open to suggestions as to how best to pare down this action.  One possibility is that the parties might agree that, at trial, only a certain reasonable number of patent claims will be asserted against no more than perhaps two products in, at most, each of the five product categories.  The parties might further agree that the selected claims are representative of all claims, and that the selected products are representative of all accused products.  The parties are free further to agree to any formula to measure damages based on the representative claims and models.  Counsel for both parties should meet and confer and submit recommendations upon which the number of claims and models shall be based.

4.     Consideration will be given to the possibility of bifurcating the trial to separate the invalidity and inequitable conduct portions and try those first.

5.     The old case management schedule will be replaced.  This will be done in a separate order.

6.     Note well that the number of depositions allowed will *not* be enlarged at this time.  After the existing allotment is used up, any applications to do so must demonstrate reasonableness in the conduct of discovery by the applicant.

Due to the apparent confusion evidenced at the December 16 hearing, out of an abundance of caution, defendant's motion for leave to amend its answer is **GRANTED**.

The second amended complaint shall be filed and served with summons within

**FOURTEEN CALENDAR DAYS**.  Defendant then has **FOURTEEN CALENDAR DAYS** to file an answer.

**IT IS SO ORDERED.**

Dated:  December 17, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE